# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

**In re: Kendrick Oyola**

**Case No. 24-5019**

---

## BRIEF IN SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11, 28 U.S.C. § 1927

---

Kendrick Oyola
1817 Maryland Ave, Apt 301
Baltimore MD
21201
301-442-0634
Kendrickoyola@gmail.com

# TABLE OF CONTENTS

BRIEF IN SUPPORT MOTION FOR SANCTIONS        **4**

a.    Background                                                                    4

I.    NO SUBSTANTIVE CHANGES FROM THE 2023 REGION 1
      DECISION: ADMINISTRATIVE FAILURE5

II.   IMPACT OF REGION 1'S 2023 DECISION ON THE
      PETITIONER'S CASE   **6**

a.    Region 1's Causal Fallacy                                               7

III.  OSHA REGION 1'S PROCEDURAL MISCONDUCT AND ITS
      IMPACT ON THE PETITIONER      **8**

a.    OSHA's Legal Obligation to Adhere to Its Whistleblower
      Investigations Manual                                                    8

b.    Contrast Between DOL's Whistleblower Enforcement Under Walsh
      and the Mishandling of the Petitioner's Case (2023–2025)        10

IV.   2025 DOL THE SOLICITOR SUBMITS CASE THAT PROMOTES
      REGION 1'S FALSE NARRATIVE    **10**

V.    A RIGGED SYSTEM: COERCED SETTLEMENT THROUGH
      PROCEDURAL MISCONDUCT       **11**

a.    Coercion by Design: Legal Precedents Against Procedural Misconduct
      12

b.    OSHA and the Solicitor's Office: Procedural Manipulation to Force
      Settlement                                                                  13

c.    A System Built to Exhaust, Not to Deliver Justice                 14

1

VI.    OSHA AND THE SOLICITOR'S IMPROPER SHIFTING OF
       BURDEN TO THE PRO SE PETITIONER  **14**

VII.   POTENTIAL HYPOCRISY WITHIN THE SOLICITOR'S OFFICE:
       A FAILURE TO ENSURE DUE PROCESS  **15**

VIII.  RULE 11 BITES BACK: HOW COURTS USE IT AGAINST PRO SE
       LITIGANTS—BUT WHAT HAPPENS WHEN THE
       GOVERNMENT BREAKS THE RULES?  **17**

IX.    JUDICIAL INTERVENTION AND FULL DISCOVERY ARE
       NECESSARY TO PREVENT WMATA FROM EXPLOITING THE
       SYSTEM—A LESSON FROM THE TOBACCO INDUSTRY'S
       MANIPULATION OF THE LAW     **18**

a.     The U.S. House Committee's Approach—Steeped in Acknowledgment,
       Strained of Accountability                                      19

b.     Government Inaction Enables WMATA's Manipulation of the System  19

c.     Without Judicial Oversight, WMATA Will Rewrite the Rules in Its Favor
                                                                        21

X.     RELIEF REQUESTED: ENSURING FAIRNESS, TRANSPARENCY,
       AND ACCOUNTABILITY IN A POLITICALLY CHARGED
       CLIMATE     **21**

## CITATIONS & AUTHORITIES

**Case Law:**

- *Walsh v. United States Postal Serv.*, Civil Action 2:20-138, (W.D. Pa. March 31, 2022)
- *Wit v. United Behavioral Health*, 58 F.4th 1080 (9th Cir. 2023)
- *Hodge v. Dept. of Veterans Affairs*, 2007 MSPB LEXIS 1005

- *Gallas v. The Medical Center of Aurora, ARB Nos. 15-076, 16-012,*
- *Schweiker v. McClure*, 456 U.S. 188 (1982)
- *Perkins v. Lukens Steel Co.*, 310 U.S. 113 (1940)
- *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944)

## Statutes & Regulations:

- Federal Rules of Civil Procedure (FRCP)
    - Rule 26(a) – Duty to Disclose
    - Rule 37(c)(1) – Sanctions for Failure to Disclose
    - Rule 11 – Sanctions for Misrepresentation to the Court
- National Transit Systems Security Act (NTSSA)
- Affordable Care Act (ACA) – Section 1558 (Whistleblower Protections)
- Occupational Safety and Health Act (OSHA) – Whistleblower Protection Program
    - OSHA Whistleblower Investigations Manual
    - CPL 02-03-011 – OSHA Directive on Whistleblower Procedures
- Merit Systems Protection Board (MSPB) Case Law
- American Bar Association (ABA) Model Rules of Professional Conduct
    - Rule 3.3 – Candor Toward the Tribunal
    - Rule 1.1 – Competence
    - Rule 1.3 – Diligence
- False Claims Act (31 U.S.C. § 3730(h))
- 18 U.S.C. § 1001 – False Statements in Matters Within U.S. Jurisdiction

## This Court Ruling

Rohr Industries, Inc. v. Washington Metropolitan Area Transit Authority, 720 F.2d 1319, 1327 (D.C. Cir. 1983) ("Whenever possible courts should avoid

3

duplicated or drawn-out proceedings. The efficient administration of justice demands it." Breen Air Freight v. Air Cargo, Inc., 470 F.2d 767, 774 (2d Cir. 1972), cert.[Defendant Respondent Denied], 411 U.S. 932, 93 S.Ct. 1901, 36 L.Ed.2d 392 (1973) (emphasis added).").

Rohr Industries, Inc. v. Washington Metropolitan Area Transit Authority, 720 F.2d 1319, 1327 (D.C. Cir. 1983) ("Rote deference to agency proceedings in such circumstances can force parties to unnecessarily travel roads "equally long and expensive and available only to those with long purses . . ." Ricci v. Chicago Mercantile Exchange, 409 U.S. 289, 309, 93 S.Ct. 573, 584, 34 L.Ed.2d 525 (1973) (Douglas, J., dissenting).")

Courts are certainly empowered to delay action where there is a likelihood that a related, though not identically overlapping, agency action may produce results that will render the complex fact pattern simple or the lengthy proceeding short. See City of Mishawaka, Indiana v. Indiana and Michigan Electric Co.,560 F.2d 1314, 1322 (7th Cir. 1977), cert. [Defendant Respondent Denied], 436 U.S. 922, 98 S.Ct. 2274, 56 L.Ed.2d 765 (1978). Rohr Industries, Inc. v. Washington Metropolitan Area Transit Authority, 720 F.2d 1319, 1325 (D.C. Cir. 1983);

## BRIEF IN SUPPORT MOTION FOR SANCTIONS

a. Background

The Petitioner intended to file this motion in mid-January 2025, before the inauguration of the 47th presidential administration. However, on January 14, 2025, tragedy struck his family when his father, Juan Luis Oyola, passed away from natural causes. Juan overcame his struggles with sobriety and passed away, never relapsing for fourteen-plus years. Processing his father's death was a confusing time for his son, Kendrick, causing him to temporarily step away from

4

his legal proceedings and other worldly activities to process. During this time, the Petitioner relied on the support of friends and family to regain focus and resume his efforts in this litigation.

On January 9, 2025, the Petitioner informed the Department of Labor (DOL) that he hadn't heard from OSHA Region One (Region 1) for over three months and planned to file a Motion for Sanctions. The Solicitor responded with steps to prompt Region 1's action. After his father's death, the Petitioner emailed Fuentes the intended Motion for Sanctions, noting his bereavement. On January 21, 2025, still mourning, he received an email from the Department of Labor Law Judge (ALJ) regarding a case under the National Transit Systems Security Act (NTSSA), and upon reading it, he found it wanting. The Petitioner delayed responding due to uncertainty about whether Region 1's delay and the Solicitor's actions were intentional misconduct or bureaucratic negligence.

On or around February 13, 2025, Deakins Rollins contacted the Petitioner and the lawyer in question, attempting to pressure the Petitioner into a hasty decision for the second time. Finding the communication from Ogletree Deakins Rollins somewhat insulting, the Petitioner reached out to John Flood, the point of contact for WMATA, the Respondent, to inquire about the involvement of JC Rollins. The Petitioner reminded Ogletree Deakins that before making any decision, he needed the Respondent to disclose the possible conflict of interest that had been in place since 2019; Kendrick contacted Ogletree Deakins Grob and Flood to address the matter, but they never replied.

## I.    <u>No Substantive Changes from the 2023 Region 1 Decision: Administrative Failure</u>

The OSHA resubmission to the Administrative Law Judge (ALJ) in 2025 contained no substantive changes from its 2023 counterpart, aside from the

cosmetic addition of the term "Discovery." File 1. However, this superficial modification failed to address the critical issues that originally prompted the Petitioner to file a Writ of Mandamus. Crucially, the civil rights elements previously protected under ACA provisions by Region 3 were not restored, and the Respondent continued to rely on an altered adverse action date, clearly prejudicing the Petitioner's claims.

## II.    Impact of Region 1's 2023 Decision on the Petitioner's Case

The Petitioner consistently alleged—in the original Region 3 amended complaint, in all court documents, and through union grievances—that the adverse action by the Respondent occurred on <u>March 15, 2019</u>. This assertion is supported by Region 3's official correspondence, which features the seal of the U.S. Department of Labor, dated March 15, 2019. File 2. This correspondence confirms that the Petitioner promptly contacted OSHA after visiting the Respondent's Concentra-operated medical department. Despite this clear evidence, Region 1 deliberately omitted the March 15 date from its September 28, 2023, dismissal letter, improperly substituting the date February 27, 2019. This action distorted the factual record, benefited the Respondent, and placed an unreasonable burden on the Petitioner to disprove this manipulated timeline.

Recognizing these procedural manipulations, the Petitioner filed a Writ of Mandamus challenging:

- Unauthorized modifications of his original Region 3 case, including the improper removal of ACA protections
- Denial of a promised site investigation under Region 3
- Downgrading of his case from prima facie to "unsuccessful.

- Missing and incomplete medical records, verification of medical staff credentials, and other documentation critical to his NTSSA/ACA claim.

a. Region 1's Causal Fallacy

Region 1's reliance on the date of February 27, 2019, OSHA Region 1 dismissal letter introduces a clear causal fallacy. While the Petitioner recognizes that John DeRenzo's report on February 27, 2019, is relevant, it does not establish a causal connection to the adverse employment actions that occurred on March 15, 2019. DeRenzo's report alone does not justify the subsequent medical examination; it was merely used as a pretext by the Respondent to legitimize adverse action.

By framing events around the February 27 date, Region 1 improperly shifted the burden of proof onto the Petitioner, requiring him to prove a negative—an inherently unreasonable and prejudicial standard. This causal fallacy directly undermines the Petitioner's claims by obscuring the actual sequence of events, negatively affecting his ability to present his case fairly.

Key Points:

- John DeRenzo's report (February 27, 2019)[1] Did not violate the Petitioner's rights in isolation, assuming proper training under applicable regulations, as highlighted by the WMSC Audit. File 4. Pg 33.
- The actual violation occurred when the Respondent misused DeRenzo's report to justify retaliatory actions on March 15, 2019, in contravention of established direct-threat assessment procedures.

---

[1] The Petitioner notes that February 27, 2019, is significant for ACA claims, but it has nothing to do with John DeRenzo's motion for sanction. However, it is relevant to fraud in court.

7

- The Respondent and Concentra violated the Department of Labor Whistleblower Program Regulations pursuant to ACA Section 1558, as confirmed in the certified memorandum dated March 28, 2019. File 5.
- Region 1's misrepresentation served primarily to benefit Concentra, shielding it from necessary regulatory scrutiny.
- Region 1's actions set a dangerous precedent that erodes public trust, discourages whistleblowers, and prioritizes institutional reputation over individual rights.

### III.    OSHA Region 1's Procedural Misconduct and Its Impact on the Petitioner

On September 28, 2023, Region 1 deliberately obscured procedural clarity, relegating the Petitioner's case to a bureaucratic maze that severely disadvantaged him as a neurodivergent individual. The Petitioner did not seek special treatment but only adhered to OSHA's procedural standards as outlined in its Whistleblower Investigations Manual. Instead, Region 1 engaged in procedural obfuscation, avoiding a meaningful investigation and effectively denying the Petitioner due process. The Petitioner viewed the Court's eventual ruling in favor of OSHA not as a defeat but as confirmation of OSHA's unwillingness to conduct a fair and transparent investigation, leaving him without viable administrative remedies.

### a.    OSHA's Legal Obligation to Adhere to Its Whistleblower Investigations Manual

Legal precedent clearly supports the Petitioner's argument that OSHA was obligated to conduct a comprehensive investigation as mandated by its internal guidelines. In Plaintiff Martin J. Walsh, the United States Secretary of Labor Walsh v. United States Postal Serv., Civil Action 2:20-138, (W.D. Pa. March 31, 2022), the Court reinforced OSHA's duty to strictly adhere to its Whistleblower

8

Investigations Manual procedures for Section 11c retaliation cases. Moreover, OSHA's directive (CPL 02-03-011) requires full compliance with the manual's investigative standards to safeguard fair process and prevent retaliatory abuses.

Region 1's Supervisory Investigator failed to uphold due process in handling the Petitioner whistleblower complaint by prioritizing convenience over legal obligations, directly contradicting the legal principles the DOL Solicitor's Office advocated in Wit v. United Behavioral Health, 58 F.4th 1080 (9th Cir. 2023). Instead of ensuring a fair and impartial investigation, Region 1 disregarded essential procedural safeguards, including the duty to address a conflict of interest and adhere to established legal standards[2]. By failing to enforce whistleblower protections with the same rigor that the Solicitor's Office demands from private entities like UBH, Region 1 demonstrated a double standard—one that allows government actors to evade accountability while holding private entities to a stricter standard.

This selective application of due process principles highlights a fundamental inconsistency in DOL's approach, undermining the credibility of its enforcement efforts and raising serious concerns about fairness and integrity in whistleblower investigations.

---

[2] The OSHA Whistleblower Investigations Manual includes several provisions that align with Rule 26(a) of the Federal Rules of Civil Procedure (FRCP) regarding the duty to disclose relevant evidence. Here are key citations from the manual that reinforce the argument that the Respondent is acting in bad faith by withholding critical documents: 1. OSHA Mandates Disclosure Between Parties. 2. OSHA Mandates Disclosure Between Parties; 3. Obligation to Provide Respondent's Submissions to Complainant; 4. Negative Inference for Non-Disclosure;

b. Contrast Between DOL's Whistleblower Enforcement Under Walsh and the Mishandling of the Petitioner's Case (2023–2025)

Contrast Between DOL's Whistleblower Enforcement Under Walsh and the Mishandling of the Petitioner's Case (2023–2025) Under Secretary Martin J. Walsh, the Department of Labor has vigorously pursued whistleblower protections, highlighting high-profile cases such as that of USPS Postmaster General Louis DeJoy, who is protected from political interference in regulatory oversight—or at least it seems so. However, by 2023, before Walsh left office, his hometown office stripped Petitioner's case of whistleblower rights despite its alignment with the same legal protections the DOL previously defended. The sudden shift in enforcement priorities suggests that Region 1 and the Solicitor's Office were politically constrained, forcing them to weaken protections for certain cases despite clear evidence of retaliation.

On February 22, 2022, U.S. Committee members highlighted similar whistleblower cases, yet by 2023–2025, the Petitioner's case—one that would have exposed regulatory misconduct—was actively suppressed. Unlike previous DOL efforts to hold politically connected entities accountable, the Petitioner was instead pushed toward settlement through procedural manipulation rather than fair adjudication. This inconsistency in enforcement underscores the need for judicial intervention, full discovery, and reinstatement of whistleblower protections, ensuring that regulatory oversight is not dictated by shifting political pressures.

IV.  **2025 DOL the Solicitor Submits Case that Promotes Region 1's False Narrative**

Before the ALJ's e-service provided case details, the Petitioner emailed the Solicitor a copy of his outdated Motion for Sanctions, outlining concerns about a potential conflict of interest. He also sent the Respondent's document titled

10

"Respondent's Initial Disclosures," highlighting his fears that Ogletree Deakins had failed to disclose a key conflict of interest—specifically, John DeRenzo's full job title and the validity of the February 27, 2019, report. File 6.

The Petitioner expected the Solicitor to address the issue. He did not. So when the Petitioner read the ALJ case document (2025), he recognized the case structure left too many unanswered questions from his writ. Region 1's vagueness and framing were such that most pro se litigants would not recognize the underlying issue. Fortunately, the Petitioner's documented trust issues—as noted in the Respondent's IME report—caused him to pause and acknowledge the Catch-22 in play. This was not merely an oversight but a deliberate manipulation of facts, distorting the adverse action into a misleading event, effectively creating a maze of confusion that disproportionately disadvantaged the neurodivergent Petitioner. Ultimately, the Petitioner's case was framed for dismissal by a Region 500 miles away.

With no viable options, Kendrick is forced into settlement while the Respondent, Concentra, and Ogletree escape accountability. If true, this scheme is even more insidious than it appears—not merely a procedural failure but an intentional strategy to create a false equivalence situation, shifting blame onto the victim despite clear evidence of employer misconduct.

## V.    A Rigged System: Coerced Settlement Through Procedural Misconduct

Rather than conducting a fair investigation, the Solicitor appears to have tested the Petitioner's resolve, exploiting procedural loopholes to force a compromise rather than seek justice. If true, then OSHA Region 1 effectively engineered a blueprint to pressure the Petitioner into settlement—not through legitimate negotiation, but by stacking the odds against him. The Solicitor and

court officers could have flagged these procedural violations for the ALJ, but they chose silence instead. Rather than confronting the severity of the misconduct, they leveraged it, pressuring the Petitioner to accept any offer placed before him. File 7.

This false equivalence fallacy treats the Petitioner—the clear victim—as if he shares equal responsibility with the Respondent despite overwhelming evidence to the contrary. If the Respondent violated federal protections, the burden of accountability should fall on them, not the Petitioner. Yet, Region 1's manipulation of key facts flipped this burden, forcing the Petitioner into a no-win scenario: fight an uphill legal battle rigged against him or accept an unjust settlement.

a. Coercion by Design: Legal Precedents Against Procedural Misconduct

Courts have consistently ruled that settlement agreements are not truly voluntary when one party is placed at an undue disadvantage due to procedural misconduct or bad-faith actions. The Merit Systems Protection Board (MSPB) and federal courts recognize that when an administrative agency engages in procedural irregularities, misrepresentation, or deliberate delays, any resulting settlement may be considered coerced rather than voluntary.

In Hodge v. Dept. of Veterans Affairs, 2007 MSPB LEXIS 1005, the MSPB examined whether a settlement agreement was valid when the appellant was forced into an unfavorable position due to procedural conditions that disadvantaged him. The board ruled that a settlement is not voluntary if it results from improper pressure, misrepresentation, or an agency's failure to comply with due process obligations. This decision reinforces a crucial principle: when government misconduct leaves a litigant with no fair alternative, the resulting settlement lacks true voluntariness.

Similarly, in Schweiker v. McClure, 456 U.S. 188 (1982), the Supreme Court reaffirmed that due process demands fairness and impartiality in administrative proceedings. When an agency's actions compromise the integrity of those proceedings, the affected party is denied a fair adjudication, rendering any settlement questionable and potentially invalid. Further, in Perkins v. Lukens Steel Co., 310 U.S. 113 (1940), the Court emphasized that government agencies must follow their procedures. When they fail to do so, they create an unfair burden on litigants, effectively coercing them into unjust resolutions.

b. OSHA and the Solicitor's Office: Procedural Manipulation to Force Settlement

In this case, OSHA Region 1 and the Solicitor's Office orchestrated procedural obstacles to manufacture a scenario in which settlement was the Petitioner's only viable choice. Their misconduct included:

- Altering the adverse action date to distort the timeline in favor of the Respondent.
- Ignoring a prior court ruling that should have restored procedural protections.
- Suppressing critical evidence that would have substantiated the Petitioner's claims.

Each of these actions served to erode the Petitioner's ability to fairly litigate his case, making settlement a forced necessity rather than a freely negotiated resolution. The Solicitor's failure to intervene and correct these procedural abuses, despite having the authority to do so, further highlights the deliberate nature of the coercion.

c. <u>A System Built to Exhaust, Not to Deliver Justice</u>

The case law is clear: when procedural misconduct obstructs a fair hearing, any resulting settlement cannot be considered voluntary. The Court must scrutinize OSHA Region 1 and the Solicitor's role in this coercive process, particularly under the same Rule 11 standard that government attorneys routinely use against pro se litigants. This is not just a bureaucratic misstep—it is a deliberate strategy to shield the transit agency from accountability while undermining the Petitioner's right to justice. The broader implications are alarming: if regulatory agencies prioritize institutional reputation over individual rights, then due process protections are nothing more than illusions.

Faced with a system designed to delay, mislead, and exhaust, the Petitioner found himself trapped in an endless feedback loop of frustration and obstruction. At one point, the weight of the injustice—combined with the psychological toll of fighting an unwinnable battle—pushed him toward the brink of abandoning his case entirely (Fight or Flight). But stepping away would have been a concession to a system that thrives on coercion and procedural manipulation.

## VI.    <u>OSHA and the Solicitor's Improper Shifting of Burden to the Pro Se Petitioner</u>

OSHA Region 1 and the Solicitor's Office imposed unfair stress on Kendrick, the neurodivergent railcar mechanic, effectively compelling him to rectify procedural errors that were solely OSHA's responsibility. Petitioner, who is not trained as an OSHA investigator or legal professional, should never have been expected to identify, justify, or correct the procedural failures committed by the

14

very agencies charged with protecting whistleblower rights.[3] Instead, Kendrick was forced into an untenable position: navigating complex procedural issues that OSHA had created while attempting to be productive at his job. Despite clear legal precedents that could have guided OSHA and the Solicitor in addressing procedural defects, the agencies chose inaction, leaving the Petitioner's case stranded in administrative limbo.

### Applying Gallas to Oyola Case

| NTSSA | | ACA | |
|---|---|---|---|
| Case No. NTS-20-0001 | | Case No. ACA 20 0001 | |
| March 2019 | Nov 2020 | March 2019 | Nov 2020 |

The American Bar Association (ABA) Model Rules of Professional Conduct establish strict standards for attorney competence and diligence, recognizing that neglecting a case due to personal issues can constitute professional misconduct if it prejudices a client's interests. Yet, when a court officer's actions create unnecessary stress and hardship for a pro se litigant—directly impacting their ability to litigate effectively and function in daily life—there appears to be no comparable accountability. This double standard undermines the fairness of the legal process and places an unjust burden on pro se litigants like Kendrick.

**VII.**    **Potential Hypocrisy within the Solicitor's Office: A Failure to Ensure Due Process**

---

3  The Solicitor failed to follow the key precedent set in lh, which offered a clear legal framework for the Petitioner's case. In Gallas, the ALJ correctly separated claim deadlines under the Sarbanes-Oxley Act (SOX) and the ACA, effectively applying a "Divide et Impera" (Divide and Rule) approach.

15

The Department of Labor's Solicitor's Office has clarified in Wit v. UBH that violations of due process and failures to provide essential services are unacceptable when committed by private entities. Still, when a sister department applies the exact tactic, the Solicitor becomes the Devil's Advocate. In Oyola's case, Region 1 assumed UBH's position by using its internal policies, which prioritized cost-cutting over patient care and infringed on due process and fiduciary duties under ERISA.

- Failure to Provide Services & Due Process

In Wit v. UBH, the Solicitor argued that UBH had violated its obligations by applying improper internal standards, thereby denying claimants access to medically necessary services. Similarly, in Oyola's case, Region 1's Supervisory Investigator failed to uphold due process by prioritizing convenience over legal obligations; just as UBH restricted access to healthcare, Region 1 restricted access to fair legal proceedings in whistleblower cases.

- Selective Enforcement of Justice

In Wit, the government insisted that private entities, such as UBH, be held accountable for failing to meet their legal obligations. Yet, the same Solicitor's Office refuses to hold itself accountable when Region 1 investigators violate due process in whistleblower cases. If due process is essential for healthcare claimants, why is it not equally critical for federal whistleblower complainants?

- A Standard That Must Apply Equally

The pro se Petitioner's argument is clear: any entity responsible for decisions that impact individuals' rights and access to benefits must follow fair procedures and uphold its ethical obligations. The Solicitor's stance in Wit demonstrated a

16

commitment to holding private entities accountable—yet that same standard is conspicuously absent when applied to its actions.

## VIII.    Rule 11 Bites Back: How Courts Use It Against Pro Se Litigants—But What Happens When the Government Breaks the Rules?

Rule 11 is often wielded as a weapon against pro se litigants, punishing them for allegedly clogging the courts with frivolous claims. But what happens when the government—armed with legal resources and institutional power—violates the same rule by making baseless arguments, misleading the Court, or obstructing due process? If Rule 11 is truly about maintaining the integrity of the legal system, then it should apply equally to all parties, not just those without a law degree.

When the Petitioner contacted the Solicitor and shared his pre-January 21, 2025, Motion for Sanctions, he sought to resolve key concerns before escalating the matter. Had the Solicitor addressed these issues, litigation costs could have been lower, and the Court would not have had to review another motion from a pro se litigant. The Solicitor failed to confirm important facts that could have clarified issues and reduced the need for legal proceedings.

Specifically, WMATA and its consultant failed to disclose material findings from a federal investigation to key tribunals overseeing the Petitioner's District Court civil rights case and DOL whistleblower case. This concealment prevented the introduction of evidence that could have substantiated claims of wrongful retaliation, regulatory noncompliance, and federal whistleblower violations. Reports from the Washington Metrorail Safety Commission (WMSC) and the Federal Transit Administration (FTA) in 2019 and 2021 identified recurring deficiencies in drug and alcohol compliance—directly corroborating the Petitioner's allegations of inadequate oversight and regulatory failures. These deliberate omissions and misrepresentations may constitute fraud upon the Court

17

(Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944)), procedural misconduct under FRCP Rule 11, and potential violations of 18 U.S.C. § 1001 for materially false statements in matters under U.S. government jurisdiction.

Had the Solicitor fulfilled their duty and confirmed these facts, they could have either validated the Petitioner's claims or identified any errors, thereby preventing unnecessary legal entanglement. If the Petitioner is wrong, it weakens their case; if they are right, it exposes a severe abuse of process that demands accountability.

## IX.    Judicial Intervention and Full Discovery Are Necessary to Prevent WMATA from Exploiting the System—A Lesson from the Tobacco Industry's Manipulation of the Law

If history has taught us anything, it is that corporate and institutional power, when left unchecked, will exploit loopholes to shield itself from accountability. The tobacco industry's influence over the American Law Institute's (ALI) Restatements of Torts is a prime example—where an entire legal framework was hijacked to serve corporate interests, allowing tobacco companies to evade liability for decades despite overwhelming evidence of harm. Regulators and courts failed to intervene until the damage was undeniable, leaving behind a legacy of avoidable deaths, costly litigation, and irreversible public harm. Now, history is repeating itself.

WMATA, like Big Tobacco, is leveraging regulatory capture, procedural manipulation, and selective legal interpretation to insulate itself from scrutiny. By altering case timelines, suppressing discovery, exploiting administrative loopholes, and benefiting from OSHA Region 1's passive immunity, WMATA has weaponized due process itself, turning it into a facade of accountability rather than an actual safeguard of rights.

18

a. The U.S. House Committee's Approach—Steeped in Acknowledgment,
   Strained of Accountability

It is 2025, and everyone is waiting for someone to take action. The problem
is that inaction is what Congress does best—until a crisis becomes too big to
ignore. The U.S. House Committee on Oversight and Accountability has openly
acknowledged that WMATA has failed in its duties, yet it steps in without any
significant action. The Committee believes these failures should be addressed
without demanding actual consequences.

This performative oversight mirrors the early responses to the tobacco
industry—where congressional hearings exposed damning evidence, yet no
immediate enforcement followed. The result?

History is repeating itself, and the consequences are already unfolding.
Despite the Maryland Attorney General contacting the Respondent, the medical
board, the Federal Transit Administration (FTA), and now OSHA Region 1, there
has been no decisive government action—only a slow, bureaucratic response that
creates the illusion of oversight while failing to impose meaningful accountability.
WMATA has capitalized on this hesitation, just as tobacco companies once did,
continuing its misconduct under the guise of compliance.

They say safety is written in blood—but without accountability, that blood is
merely fuel for the engine of negligence.

b. Government Inaction Enables WMATA's Manipulation of the System

While multiple government agencies, including the Maryland Attorney
General, OSHA Region 1, and the FTA, are now involved in investigating
WMATA, their current approach has been reactionary rather than proactive. Instead
of directly confronting the systemic failures, the government's slow and

19

compartmentalized response has allowed WMATA to remain in control of the narrative. Just as the tobacco industry relied on delays, misinformation, and procedural manipulation to evade responsibility, WMATA has followed a similar blueprint:

1. Delaying full disclosure by exploiting OSHA Region 1's deference to employer-provided information, allowing WMATA to control what regulators see and investigate.

2. Suppressing critical evidence, including the January 15, 2018, derailment, the preliminary safety meeting, and the subsequent FTA audit—all of which highlighted regulatory violations that could have substantiated safety and compliance failures. This mirrors how the tobacco industry buried research linking smoking to cancer to protect its financial interests.

3. Plausible deniability and bureaucratic confusion—During U.S. House Committee proceedings, WMATA officials employed strategic ambiguity to create a confusing and fragmented narrative, preventing clear accountability. Instead of direct answers, they relied on bureaucratic inaction, ensuring that multiple government agencies investigate in silos rather than through coordinated enforcement. This tactic not only delays meaningful oversight but also creates a regulatory smokescreen, shielding WMATA from immediate consequences.

By leveraging government inefficiencies and exploiting fragmented oversight, WMATA has maintained control of the regulatory process, much like Big Tobacco manipulated public health policy for decades. Without judicial intervention and full discovery, WMATA will continue rewriting the rules to serve its interests while avoiding real accountability.

c. Without Judicial Oversight, WMATA Will Rewrite the Rules in Its Favor

Suppose the courts fail to intervene, just as they did for years with Big Tobacco's legal manipulation. In that case, they will be complicit in allowing another powerful entity to distort regulatory processes for its benefit. Judicial intervention and full discovery are not just necessary—they are the only way to prevent WMATA from rewriting its own rules unchecked by legal or ethical constraints.

The warning signs are already clear: a transit agency under investigation, a federal regulatory system that appears hesitant to act, and a growing body of evidence being ignored or misrepresented if the government continues to steep in its inaction—the consequences will be devastating not only for the Petitioner but for the integrity of whistleblower protections and public safety at large.

## X.     Relief Requested: Ensuring Fairness, Transparency, and Accountability in a Politically Charged Climate

The Petitioner acknowledges the power imbalance in the current political climate and recognizes that Region 1 and the Solicitor's Office face institutional and political pressures that complicate their ability to act decisively. However, this reality does not excuse procedural misconduct, suppression of whistleblower claims, or the failure to conduct a fair and impartial investigation.

The Petitioner is not seeking humiliation of OSHA Region 1 or the Solicitor's Office but rather humility—an acknowledgment of the failures that have compromised the integrity of the legal process and harmed a whistleblower acting in good faith.

To restore fairness and ensure accountability, the Petitioner respectfully requests the following relief:

1. Court-Ordered Correction of Procedural Misconduct
   o The Court should order OSHA Region 1 and the Solicitor's Office to correct the procedural defects in the handling of the Petitioner's case, including:
      ▪ Restoring Region 3 Case Decision.
      ▪ Exclude all evidence referencing the February 27, 2019, report and the Drug Test Investigation by Espy-Smith, as these were based on an inaccurate timeline, compliance issues with Federal Regulations, and potential conflicts of interest.
      ▪ Since the February 27, 2019, report was improperly introduced and based on an undisclosed conflict of interest, the Court should strike and exclude it from consideration in these proceedings. This prevents the Respondent from benefitting from its misconduct.
      ▪ Acknowledging that the Petitioner's civil rights protections under the ACA were improperly removed
      ▪ Consider the Petitioner's request for a Change of Venue to the Delaware of Chancery.

2. Independent Review & Judicial Oversight to Counter Power Imbalances
   o Given the political pressures and regulatory challenges within Region 1 and the Solicitor's Office, the Court should appoint an independent special master or external investigator to review the handling of this case.
      ▪ This will ensure that the final resolution is based on facts and legal principles rather than institutional self-preservation.

3. Compensation for Retaliatory Harm & Lost Wages

- Due to the extended delays under Region 1, procedural manipulation, and the government's failure to act on verified fraud, the Petitioner requests:
  - Lost wages compensation for the time spent correcting OSHA's errors and navigating the procedural maze created by the Respondent and regulatory agencies
  - Whistleblower compensation under the False Claims Act (31 U.S.C. § 3730(h)) for exposing fraud within the FTA USDOT DBE Medical Program, which resulted in a confirmed violation but was suppressed to protect WMATA.
  - Monetary damages for emotional distress and reputational harm caused by the deliberate misrepresentation of the Petitioner's claims

4. <u>Court Order Preventing Further Retaliation</u>
   - The Petitioner requests a judicial order prohibiting WMATA, OSHA, and the Solicitor's Office from taking any further retaliatory actions that would:
     - Suppress evidence, exclude the Petitioner from regulatory processes related to his original complaint, and use procedural tactics to coerce a settlement under unfair conditions.

5. <u>Acknowledgment of the systemic barriers faced by whistleblowers and the challenges for neurodivergent whistleblowers</u>
   - The Petitioner does not seek retribution but rather recognition of the institutional challenges that have obstructed justice, as well as an acknowledgment of how these tactics constitute bullying and harassment, which have a disparate impact on numerous divergent pro se litigants.

    o  Region 1 and the Solicitor's Office should issue an informal apology to past and present staff members. The Petitioner does not need to be involved; an acknowledgment is fine, too.

Conclusion: A Call for Institutional Humility, Not Humiliation

The Petitioner acknowledges that OSHA Region 1 and the Solicitor's Office function within a complex system where investigators face limited resources and institutional constraints. This motion is not about humiliating the DOL OSHA employees involved but about ensuring a fair and transparent resolution—one that acknowledges mistakes and corrects injustices. It upholds the fundamental principles of due process. The path to hell is paved with good intentions.

By granting this relief, the Court will send a clear message that whistleblower protections are not mere promises, that due process must be upheld regardless of political pressures, and that institutions must have the humility to recognize and address their failures. Therefore, I, Kendrick Oyola, ask this Court to help this country understand that **checks and balances** should not cause a whistleblower's **checks** to bounce due to a negative bank **balance**.

_____3.18.2025_____

The humiliation is reserved for those who violated the Petitioner's civil rights and profited from these violations. He, who thanks WMATA for hiring him under the DEI program in 2001, humbly requests that this Court rule in his favor.

Content

**Received March 18, 2025**

The UNITED STATES DEPARTMENT OF LABOR OFFICE OF
ADMINISTRATIVE LAW JUDGES: ORDER GRANTING CHANGE OF
VENUE

---

**Filed on March 18, 2025. 18:00**

The UNITED STATES DEPARTMENT OF LABOR OFFICE OF
ADMINISTRATIVE LAW JUDGES: MOTION FOR RECONSIDERATION
AND CLARIFICATION OF ORDER GRANTING CHANGE OF VENUE

---

Filed on February 23, 2025

The UNITED STATES DEPARTMENT OF LABOR OFFICE OF
ADMINISTRATIVE LAW JUDGES: MOTION TO FILE A POINT OF ORDER

---

On March 18, 2025, between 11 AM and 12 PM, I emailed SOL Fuentes the
Motion for Sanctions along with the supporting brief, as requested. This was done
in accordance with professional courtesy. Approximately five hours later, I was
sideswipe with the ruling ALJ. It held the Point of Order for nearly a month.

## UNITED STATES DEPARTMENT OF LABOR
## OFFICE OF ADMINISTRATIVE LAW JUDGES

In the Matter of:

KENDRICK OYOLA,

     Complainant,

v.

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY (WMATA),

     Respondent.

OALJ CASE NO.: 2024-NTS-00001

OSHA CASE NO.: 3-0050-10-104


## MOTION FOR RECONSIDERATION AND CLARIFICATION OF ORDER GRANTING CHANGE OF VENUE

Pursuant to 29 C.F.R. § 18.93, Complainant respectfully moves this Court for reconsideration and clarification of its Order dated March 18, 2025, granting a Motion for Change of Venue. In support of this motion, Complainant states the following:

On February 24, 2025, Complainant filed a Motion to File a Point of Order. Within this filing, Complainant mentioned conditions and prerequisites necessary before any consideration of a venue change. However, Complainant explicitly did not request a change of venue under the "Relief" section of said filing.

The Order issued by this Court on March 18, 2025, interpreted Complainant's filing as a direct and unconditional request for a venue change, i.e., restoring the case to Region III ruling. Address the conflict of interest. Complainant's actual intent was to outline essential procedural and jurisdictional conditions to be evaluated and fulfilled prior to granting such relief. Complainant respectfully asserts that the premature granting of a change of venue prejudices Complainant by not addressing procedural deficiencies and the necessary prerequisites originally outlined. As a pro se litigant, Complainant respectfully requests that his pleadings and filings be construed liberally and given the

same legal weight and consideration as those drafted by licensed attorneys, in accordance with established judicial principles affording pro se litigants fair and equitable treatment.

WHEREFORE, Complainant respectfully requests that the Court:

A.    Reconsider and withdraw the Order dated March 18, 2025, granting Complainant's Motion to Change Venue;

B.    Clarify that Complainant has not yet explicitly or unconditionally requested a change of venue;

C.    Permit Complainant to present arguments concerning the necessary procedural conditions and prerequisites before any decision regarding venue change is made; and

D.    Grant such other and further relief as deemed just and proper.

Respectfully submitted,

Kendrick Oyola, Complainant

4034 34th Street

Mount Rainier, MD 20712

Email: kendrickoyola@gmail.com

Date: March 18, 2025

_____ko 3/18/2025_____

This Court has jurisdiction under 28 U.S.C. § 1651 (All Writs Act) and 5 U.S.C. § 706, as Petitioner seeks extraordinary relief from agency action that violates federal law, due process rights, and principles of fairness.

## BACKGROUND

OSHA Region One Procedural Misconduct: Petitioner initially filed a whistleblower complaint on March 15, 2019, alleging retaliation under the National Transit Systems Security Act (NTSSA). OSHA Region One, in a dismissal dated September 28, 2023, misrepresented the adverse action date as February 27, 2019, contradicting official records and shifting the burden unfairly onto Petitioner.

Rule 11 – Sanctions: After the court's ruling on September 15, 2024, OSHA and SOL did not start any administrative remedies within 100 days. The Petitioner notified SOL of his father's terminal condition and filed a Motion for Sanctions. On January 16, 2025, the Petitioner informed SOL of his father's death and sent his document to the ALJ. Five days later, the Petitioner received an ALJ letter stating that OSHA resubmitted the same case under Region 1 dismissal, but with extremely limited biased discovery, which is explained in the Brief.

Failure of Independent Review: The DOL Solicitor's Office (SOL) failed to conduct an independent review of the case and instead adopted the Respondent's false narrative, reinforcing OSHA's errors.

Improper Change of Venue: On March 18, 2025, the ALJ erroneously interpreted Petitioner's filings as a motion for a change of venue, despite Pro Se Petitioner never requesting such relief under the "Relief" section of his pleadings. This decision effectively dismissed Petitioner's case with prejudice, forcing him to refile in federal court without first addressing

# UNITED STATES DEPARTMENT OF LABOR

## Office of Administrative Law Judges
### Newport News, VA

_____

**Issue Date: 23 January 2025**

**OALJ CASE NO.:  2024-NTS-00001**

**OSHA CASE NO.: 3-0050-10-104**

In the Matter of:

**KENDRICK OYOLA,**
     Complainant,

    v.

**WASHINGTON METROPOLITAN AREA**
**TRANSIT AUTHORITY (WMATA),**
     Respondent.

### NOTICE OF ASSIGNMENT

### ORDER FOR STATUS BY 4/18/2025

This matter arises under the National Transit Systems Security Act of 2007 ("NTSSA"), 6 U.S.C. § 1142, and the applicable regulations issued thereunder at 29 C.F.R. Part 1982.

This case has been assigned for hearing and decision. All future correspondence, pleadings, and responses should be addressed to the presiding Judge:

Honorable Dana Rosen
Office of Administrative Law Judges
11870 Merchants Walk, Suite 204
Newport News, Virginia 23606
OALJ-NewportNews@dol.gov

## REQUIRED ACTION OF PARTIES

This Notice of Assignment marks the beginning of the following actions required of all Parties:

1. **APPEARANCE OF REPRESENTATIVE.** Should a Party retain a representative in this case, they must promptly notify this office and the other Party of the representative's name, address, email address and telephone number. Representatives are directed to file a Notice of Appearance in accordance with 29 C.F.R. §18.22(a). If representative is not an attorney admitted to practice law, the representative must file a request with the presiding Judge requesting permission to represent the Party. 29 C.F.R. §18.22(b)(2)

2. **NAMED PARTIES.** This notice is being sent to the Parties and their counsel as identified by the Secretary of OSHA on the service sheet and other supplemental information in the file. **All persons served should review the service sheet to ensure that the proper Parties have been served.** Any errors should be brought to the attention of this Office as soon as possible.

3. **DISCOVERY/INITIAL DISCLOSURES.** Formal discovery may now commence and is to be conducted expeditiously in this matter pursuant to 29 C.F.R. § 18.50 unless otherwise provided in this prehearing order. Within twenty-one (21) days from the date of this notice, and without awaiting a formal discovery request, the parties shall provide to all other parties the following documents and information in their respective possession, to the extent that they have not previously been exchanged:

   (a) the name and, if known, the address and telephone number of each individual likely to have discoverable information - along with the subject(s) of that information – that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

   (b) a copy – or a description by category and location – of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment; and,

   (c) a computation of each category of damages claimed by the disclosing party who must also make available for inspection and copying as under 29 C.F.R. § 18.61 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.

4. **MOTIONS.** All motions and other requests for relief, including requests for extensions of time or continuances, must be submitted in motion form, with a caption and case number. 29 C.F.R. § 18.33. The parties may not make any

2

substantive motion or argument in the body of the email by which the motion is filed. If the motion is opposed, the motion must contain a declaration that the parties have made a good faith effort but were unable to resolve the dispute giving rise to the motion before filing it. Any motion failing to contain the required declaration may be summarily denied.

5. **SUBPOENAS**. Subpoenas are not available to the parties because the National Transit Systems Security Act ("NTSSA") does not expressly or implicitly provide administrative law judges authority to issue subpoenas. See Fagan v. Dep't of Navy, ARB No. 2023-0006, ALJ No. 2021-CER-00001 (ARB Feb. 28, 2024).

6. **FAX SUBMISSIONS AND FILINGS.** No faxes will be accepted at this time. All filings in this matter, including motions, pleadings, correspondence, or other documents shall be filed electronically by email attachment in .pdf format sent to OALJ-NewportNews@dol.gov or by the E-File system available at https://efile.dol.gov/.

7. **SETTLEMENTS**. OALJ has established a Settlement Judge Program which is available to litigants, 29 C.F.R. § 18.13. Any requests for appointment of a Settlement Judge in this case must be a joint request and submitted in writing. Information about settlement judge proceedings can be found on the OALJ website. The parties must advise immediately of requests for settlement judge proceedings and any settlements reached in this matter.

8. **CONSEQUENCES OF FAILURE TO COMPLY**. Failure to comply with the provisions of this prehearing order may result in the imposition of sanctions including, but not limited to the exclusion of evidence, the dismissal of the claim, the entry of a default judgment, or removal of the offending representative from the case. 29 C.F.R. §§ 18.12 (b), 18.35, 18.50, 18.57, and 18.87.

## STATUS

The Parties are to submit **A STATUS REPORT OR, IN THE ALTERNATIVE, SETTLEMENT DOCUMENTS.** The report to the court shall advise regarding the status of the case, including:

a. **Discovery**: Whether discovery has been completed. This should include a description of any pending discovery sought by the Parties still to be completed, including the status of depositions taken, the names of those witnesses remaining to be deposed and any scheduled dates of depositions, and whether more time is needed to complete discovery;

b. **Settlement/Mediation**: Whether the Parties are mediating and the date of any scheduled mediation, whether the Parties have settled the matter or entered into consent findings, whether the Parties need additional time to finalize a settlement;

3

whether the Parties would like to participate in Department of Labor mediation or settlement judge process and jointly request same, and

c. **Hearing**: If all is complete, whether the Parties desire this matter to be set for hearing, advising the number and nature of witnesses, the expected length of time to present their case or defense, and the number of days.

All filings in this matter, including motions, pleadings, correspondence, or other documents shall be filed electronically by email attachment in .pdf format sent to OALJ-NewportNews@dol.gov or by the E-File system available at https://efile.dol.gov/.

This status report is due by **4/18/2025.**

**SO ORDERED.**



Digitally signed by Dana A. Rosen
DN: CN=Dana A. Rosen,
OU=Administrative Law Judge, O=US
DOL Office of Administrative Law
Judges, L=Newport News, S=VA, C=US
Location: Newport News VA

DANA ROSEN
Administrative Law Judge

4

## SERVICE SHEET

Case Name: **Oyola_v_Washington_Metro_Are_**

Case Number: **2024NTS00001**

Document Title: **NOTICE OF ASSIGNMENT / ORDER FOR STATUS BY 4/18/2025**

I hereby certify that a copy of the above-referenced document was sent to the following this 23rd day of January, 2025:



Digitally signed by Amy Ouellette
DN: CN=Amy Ouellette, OU=Paralegal
Specialist, O=US DOL Office of
Administrative Law Judges, L=Newport
News, S=VA, C=US
Location: Newport News VA

**Amy Ouellette**
Paralegal Specialist

OSHA-Region 1 Regional Administrator
Regional Administrator
Region 1
U. S. Department of Labor, OSHA
Room E340
JFK Federal Building
BOSTON MA 02203
    *{Electronic - Regular Email}*

OSHA, Whistlebl Director
Director
Directorate of Whistleblower Protection Programs
U S Department of Labor, OSHA
Room N 4618 FPB
200 CONSTITUTION AVE NW
WASHINGTON DC 20210
    *{Electronic - Regular Email}*

Boston Regional Solicitor
Regional Solicitor
U. S. Department of Labor
JFK Federal Building
25 New Sudbury Street, Room E-375
BOSTON MA 02203
    *{Electronic - Regular Email}*

Kendrick Oyola
kendrickoyola@gmail.com
4034 34th Street
MOUNT RANIER MD 20712
    *{Electronic - Regular Email}*

James Rollins
clay.rollins@ogletree.com
Ogletree Deakins
901 E. Byrd Street
Suite 1300, West Tower
RICHMOND VA 23219
    *{Electronic - Regular Email}*

Reynaldo Fuentes
fuentes.reynaldo.a@dol.gov
Office of the Solicitor, Fair Labor Standards (F
4209 48th PL NW
WASHINGTON DC 20016
    *{Electronic - Regular Email}*

OALJ CASE NO.: 2024-NTS-00001

OSHA CASE NO.: 3-0050-10-104

In the Matter of:

KENDRICK OYOLA,

Complainant,

v.

WASHINGTON METROPOLITAN AREA

TRANSIT AUTHORITY (WMATA),

Respondent.


MOTION TO FILE A POINT OF ORDER

I, Kendrick Oyola, rise to address a point of order as the matter has strayed significantly from the investigations conducted by the Region Three OSHA Whistleblower Intake Investigator and the Region Supervisor in 2019 and 2021, respectively. Therefore, Kendrick Oyola respectfully submits this Motion to File a Point of Order before this Honorable Court. In support of this Motion, he would like to state the following:


1. INTRODUCTION
   a. This Motion is filed by the court's rules and applicable laws governing procedural matters.
   b. Confirm that the Federal Department of Labor Occupational Safety and Health failed to follow the United States Court of Appeals, D. C. Circuit's ruling.
   c. The Movant brings this Point of Order to address a procedural issue that requires immediate attention to ensure fair and just proceedings, or ...

    d.  To ensure fairness, Movant requests a compromise that allows a change of venue
       to adjudication to Region III, excluding courts physically located in MD, DC, and
       VA.

2.  STATEMENT OF FACTS
    a.  On or around September 25, 2024, the Honorable Judges of the United States
       Court of Appeals, D. C. Circuit, ruled that Kendrick needed to exhaust
       administrative remedies in the OSHA Whistleblower Program.
    b.  One hundred-plus days later, on January 09, 2025, Kendrick Oyola emailed the
       last point of contact regarding this matter: DOL SOL. He informed the DOL that
       he would file a Motion for Sanctions.
    c.  On January 21, 2025, the DOL ALJ accepted Kendrick's case from the Office of
       the Solicitor. Still, it failed to address OSHA's decision on the core procedural
       issue and legal inconsistency that led to his Writ or give a clear administrative
       remedy path to exhaust.

3.  EXPRESSIO UNIUS EST EXCLUSIO ALTERIUS

    The "matter" before the court has nothing to do with the Kendrick OSHA Whistleblower
case, and he refuses to grant it legitimacy. The "matter" before the court excludes Region III's
decision: Amended Complaint and added protection under ACA (Civil Rights). If Kendrick
agrees to go forward, the express **mention of the matter** is under NTSSA, and the **one thing
excludes all other** allegations, including Civil Rights/ACA. Here is the problem Kendrick needs
to address and why he must file a Motion of Point of Order.

4.  OVERVIEW

    In April 2019, the OSHA Region III Intake Investigator explained the steps of the OSHA
Whistleblower investigation. According to the procedure described, when OSHA submits a case
to the ALJ for adjudication, the complainant and respondent resolve most of the relevant

nuances.[1] Next, the Department of Labor Administrative Law Judge presides over legal proceedings, listens to arguments from both sides, assesses the evidence presented, interprets the law, and ultimately makes a decision based on their understanding of the facts and applicable legal principles, ensuring that justice is served fairly and orderly, per the Fifth and Fourteenth Amendments.

In September 2023, the OSHA Region I Supervisory Investigator's Processing methods deviated significantly from standard practices, which compelled Kendrick to file a Writ of Mandamus on January 21, 2024. Kendrick recognizes that while outcomes of the OSHA investigation are inherently uncertain, OSHA Region III has unequivocally assured him that the process would follow established protocols.

In September 2024, the United States Court of Appeals for the D.C. Circuit ruled decisively in favor of the Department of Labor's OSHA. Kendrick viewed this decision as a reasonable outcome; therefore, he prudently waited for the administrative remedies he had overlooked before filing his Writ. After waiting more than a hundred days, Kendrick promptly notified the DOL's Solicitor's Office of his intention to file a Motion for Sanctions around January 9, 2025. However, before he could take this action, tragedy struck with the passing of his father, Juan Luis Oyola, on January 14, 2025, causing Kendrick to delay in filing the Motion for Sanctions; he informed DOL SOL. Instead of DOL allowing Kendrick a brief period of grief, OSHA/SOL rushed the case forward. Just eleven days after his father's passing, Kendrick[2]

---

[1] In 2018, OSHA updated its Whistleblower Investigations Manual, significantly changing how they handle retaliation complaints by incorporating new procedures, clarifying legal concepts, and streamlining the investigation process, particularly by removing statute-specific chapters and replacing them with statute-specific desk aids, making it easier to navigate different whistleblower laws under OSHA's jurisdiction; this update marked the first major overhaul since 2011.

[2] Individuals with ADHD who exhibit higher levels of hyperactivity/impulsivity are more prone to impulsive behaviors when experiencing strong emotions. These findings highlight the importance of addressing emotional contexts in understanding and managing impulsive behaviors in ADHD. Rosenthal EA, Broos HC, Timpano KR, Johnson SL. Does Emotion-Related Impulsivity Relate to Specific ADHD Symptom Dimensions, and Do the Effects Generalize Across Comorbid Internalizing and Externalizing Syndromes? J Atten Disord. 2024 Jan;28(2):178-188. doi: 10.1177/10870547231210283. Epub 2023 Nov 14. PMID: 37961911; PMCID: PMC10751976.

received an e-service email from the Administrative Law Judge (ALJ) indicating that OSHA had resubmitted his case with a critical adjustment: Discovery.

When the United States Court of Appeals, D. C. Circuit remanded his case back to OSHA, the most logical action for OSHA was to submit Region One's decision to the Administrative Review Board. Plena probatio, ARB would rule in favor of Kendrick, regardless of pro si status. (Gallas v. The Med. Ctr. of Aurora, ALJ No. 2015-ACA-005 (July 15, 2015), (D. & O. ACA); Gallas v. The Med. Ctr. of Aurora, ALJ No. 2015-SOX-013 (October 19, 2015), (D. & O. SOX)).

### 5. US COURT OF APPEALS, DC CIRCUIT RULING: ADMIN. REMEDY

#### a. Gallas v. The Med. Ctr. of Aurora

In Gallas, the pro se complainant filed a complaint under Section 806 of the Corporate and Criminal Fraud Accountability Act of 2002, Title VIII of the Sarbanes-Oxley Act of 2002, on January 14, 2015 (the negative evaluation/termination was retaliation for her complaints). Given Gallas's pro se status, the ALJ treated Gallas's "Response to Respondent's Motion to Dismiss" as her amended complaint, adding an ACA violation allegation 300 days after her former employer's adverse actions—id pg. 5. Eventually, the ALJ granted the Medical Center's summary decision under SOX and ACA. Still, Gallas appealed the dismissal of her ACA and SOX claims. The ARB affirmed the Motion for a summary decision in the SOX case but remanded the ACA claims to the ALJ for further consideration.[3]

In Gallas, every argument, allegation, Motion, and ruling is thoroughly documented and supported by case law and OSHA procedures. In contrast, OSHA Region One appears to exploit Kendrick's Pro Se status. Kendrick and Gallas's cases have one significant difference: Civil Rights Violations. However, this does not clarify Region One's decision; the Civil Rights allegations should have bolstered OSHA's commitment to uphold Due Process. Despite Region One's unsupported ruling, two higher courts agree that "whistleblower complaints involve

---

[3] Because whistleblower complaints involve inherently factual issues such as reasonable belief and motive, such "claims are rarely suited for Rule 12 dismissals." Sylvester v. Parexel Int'l, LLC, ARB No. 07-123, ALJ Nos. 2007-SOX-039, -042; slip op. at 13 (ARB May 25, 2011) (Gallas Por6, FN 8).

inherently factual issues such as reasonable belief and motive, and such 'claims are rarely suited for Rule 12 dismissals'" (See Sylvester).

## 6. OTHER RELATED COURTS: OSHA CASE/CIVIL RIGHTS CONNECTED

### a. US Court of Appeals for the D.C. Circuit.

When the US Court of Appeals for the D.C. Circuit ruled in September 2024, the Honorable Judges indicated that Kendrick may seek relief under the ACA. Since the ACA borrows the "private cause of action" from the Civil Rights Act, his claims under the Rehabilitation Act are also valid. Thus, their action confirmed that Kendrick's claim under the ACA has merit to some degree of belief.

### b. The United States Supreme Court

The Office of the Clerk of the United States Supreme Court responded to his request for an extension of time to file a writ of certiorari on May 30, 2024. It stated that he must wait because the D.C. Circuit Court of Appeals case is still pending. The Writ of certiorari aims to address the Fourth District Court of Appeals ruling under the Rehabilitation Act. It has no relation to his Department of Labor Whistleblower Program. Thus, the Supreme Court's actions imply that his two cases are closely connected. Kendrick speculates that the US Supreme Court consolidated his whistleblower and civil rights complaint for the nation's best interest in fairness while safeguarding his right to due process. If found valid, the US Supreme Court and Region III OSHA Supervisory Investigator Rudzki share a similar perspective: Kendrick's NTSSA/ACA Amended Complaint meets the minimal requirements for prima facie.[4]

---

[4] ... claims are rarely suited for Rule 12 dismissals. Sylvester, FN 8.

7.  RUDZKI'S FAIR TRIBUNAL

   a.  Walsh v. United States Postal Serv., Civil Action 2:20-138 (W.D. Pa. March 31, 2022).

     i.  *Rudzki, the Region III Supervisory Investigator*

Kendrick knows this court would not be shocked by his past positive statement about Jack Rudzki's attention to detail and fairness. As a transit employee with dyslexia, a learning disability, and generalized anxiety, Kendrick found Rudzki's blunt, fair, and scary-stern deminer comforting, a character *Tom Hank* would easily play. Kendrick knew that if Rudzki concluded after a site investigation that OSHA would not pursue his case, he would have been okay with that. Rudzki treated Kendrick the same as anyone else. After examining Rudzki's cases and impressive career, Kendrick observed that Rudzki is as reliable as "taxes and death." To support his claim, the court can compare Rudzki's professionalism in Walsh v. United States Postal Service. to Kendrick's case in 2019.[5]

     ii.  *Rudzki's Transparency*

In 2019, Rudzki told Kendrick that the OSHA Whistleblower program follows the Manual on the DOL OSHA website. In Walsh, the USPS quoted Rudzki's statement, "*USPS states that, according to Region III Supervisory Investigator Jack Rudzki, OSHA is required to follow the OSHA Whistleblowers Manual during the Section 11(c) investigation process. The Manual sets forth the requirements and expectations concerning the completion of investigations—id*, 2:20-138, (W.D. Pa. March 31, 2022). Martin J. Walsh, the United States Secretary of Labor, added to Rudzki's comment, *"The Whistleblowers Manual states that it is "intended to provide instruction regarding some of the internal operations of [OSHA], and is solely for the benefit of the Government. No duties, rights, or benefits, substantive or procedure, are created or implied by" the Manual."* id. So even though "No duties, rights, or benefits, substantive or procedure, are created or implied by" the Manual," it does not give OSHA Whistleblower Region I Supervisor Investigator carte blanche to overrule a four-year-old decision made by an Investigator with 20-year expenses.

---

[5] Walsh v. United States Postal Serv., Civil Action 2:20-138 (W.D. Pa. Mar. 31, 2022)

### iii.   *Rudzki's Fair Tribunal*

Kendrick does not assert that Rudzki is always correct or infallible; he contends that Rudzki is fair, equitable, and transparent. When speaking with Kendrick, Rudzki clarifies that a successful complaint does not automatically mean that OSHA will side with or rule in favor of the employee. If the site investigation "failed to establish[6]" or support his allegation, OSHA would rule in favor of WMATA. In 2004, this scenario occurred. In the case of David Welch[7], a former chief financial officer of Cardinal Bancshares, Welch was terminated after reporting accounting irregularities and subsequently filed a complaint under the whistleblower protection provisions of the Sarbanes-Oxley Act. In a "determination letter," Mr. Rudzki denied Mr. Welch's claim. He ruled that Cardinal Bancshares had the right to fire the finance chief. While Mr. Welch reasonably believed he had uncovered fraud, the investigator wrote, "The reason for the termination constitutes legitimate business reasons." Mr. Welch appealed to a Labor Department administrative law judge. Judge Stephen Purcell did an investigation complete with hearings and a year later issued a 72-page decision overturning the investigator's ruling. Rudzki might be mistaken, but he is neither disrespectful nor biased, and Welch's Due Process was never violated or made to appear violated by Rudzki.

### iv.   *Rudzki's Neutrality*

In 2019, Rudzki told Kendrick that the OSHA whistleblower program MUST remain natural. Outside the site investigation and Supervisory Review, any adjudication decision must come from the complainant and the respondent, and Walsh's case supports Kendrick's statement. USPS claimed that a whistleblower investigator influenced the OSHA investigation and alleged that OSHA had failed to follow its policy. USPS asserted that OSHA Investigator Rhoades stated that the "settlement wasn't an option [for USPS]" and that this decision was a "regional or program decision." Rudzki did not reply directly to the allegation, but he admitted that if

---

[6] Kendrick did not "fail to establish" that it was reasonable to believe his rights were violated under the OSHA Whistleblower Act. Region I Ehr failed to prove why Rudzki was wrong.

[7] Wall Street Journal. (2004, October 4). For financial whistle-blowers, new shield is an imperfect one. The Wall Street Journal. Retrieved from https://www.wsj.com/articles/SB109684145991934717

someone instructed OSHA Investigator Rhoades not to settle the case, that would violate OSHA policy.

### 8. CHANGE OF VENUE: THE DELAWARE COURT OF CHANCERY

#### a. For this Court's Consideration

While writing this motion, Kendrick reviewed OSHA's other cases where the investigation followed a sense of order per due process, including Hollywood. In September 2024, I believed that OSHA would seize the second chance provided by the US DC District Court of Appeals and restore my case to Rudzki's decision. Therefore, I chose not to press the issue in the Circuit Court; that was not the case. In Lauzara v Directorate of Whistleblower Protection Program (OSHA Rudzki) et al., both parties engaged in the United States District Court's Alternative Dispute Resolution program; U.S. District Court for the Western District of Pennsylvania, 3:2021cv00179. OSHA denied this option to Kendrick, too.

#### b. Unorthodox application of Under Section 1404(a) of Title 28

Under Section 1404(a) of Title 28, a federal court can transfer a civil case to a different district if doing so serves the overall interests of justice, provided that the new district is one where the case could have originally been filed. Kendrick acknowledges that this request may seem unorthodox; however, it is no more unusual than the Secretary of the Department of Labor allowing his case to be unfairly stripped of relief and transferred to Region One without justification. Delaware is in Region Three and is closer to Kendrick than Boston, MA, or Newport, VA, so in theory, it stratifies the "as long as the new district is where the case could have originally been filed" requirement.

In Lead Industries Association, Inc. v. OSHA (2d Cir. 1979), the court addressed judicial review of agency rulemaking and discussed courts' ability to transfer cases when appropriate. Notably, "Footnote 17" in that decision states that courts can initiate transfers if they serve the interests of justice or judicial efficiency.

9. REQUESTS FOR RELIEF

    a.   Grant this Motion to File a Point of Order;

    b.   Recognize and rule out the procedural issue raised.

    c.   Restore his case to the Region III decision (NTSSA/Amended complaint) and consider a transfer of venue.

    d.   Provide any other relief deemed just and proper in the interest of justice.

_____KO_____